### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

ERWIN TORRES,                          :
                                       :    Civil Action No. 08-4046 (SDW)
                Petitioner,            :
                                       :
                v.                     :    **OPINION**
                                       :
MICHELLE R. RICCI, et al.,             :
                                       :
                Respondents.           :


**APPEARANCES:**

>   ERWIN TORRES, Petitioner pro se
>   #307225/948100B
>   New Jersey State Prison
>   P.O. Box 861
>   Trenton, New Jersey 08625
>
>   CATHERINE ANTOINE FODDAI, SENIOR ASSISTANT PROSECUTOR
>   BERGEN COUNTY PROSECUTOR'S OFFICE
>   Bergen County Justice Center
>   10 Main Street
>   Hackensack, New Jersey 07601
>   Counsel for Respondents

**WIGENTON,** District Judge

Petitioner Erwin Torres, a convicted state prisoner, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court conviction and sentence.  For the reasons stated herein, the Petition will be denied for lack of substantive merit.

I.  BACKGROUND

A.  Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the factual recitation as set forth in the unpublished opinion of the Superior Court of New Jersey, Appellate Division, decided on December 10, 2001, with respect to petitioner's direct appeal from his judgment of conviction and sentence:

> Tried by separate juries, codefendants DeJesus and Torres were convicted of multiple offenses, including kidnapping, murder and first degree robbery.  The convictions arose from a single indictment which charged, in seventeen separate counts, these and other related offenses committed in three separate incidents:  one on September 16, 1995, in Staten Island; one on November 1, 1995, in Englewood Cliffs; and one on November 8, 1995, in Teaneck. All three involved first degree robberies; the Staten Island incident also included a kidnapping, while the Teaneck incident included a murder.  In inculpatory police statements and in their respective separate trials, each defendant admitted participation in the three incidents but denied the requisite criminal states of mind; defendant DeJesus imposed a defense of diminished capacity. ...
>
> ...
>
> ... evidence established that early in the fall of 1995 unindicted co-conspirator Afirm Tairi convinced the defendants to assist him in robbing Howard Lewis, the murder victim in the Teaneck robbery.  In furtherance of the plan, they followed Lewis three times between August and October to learn his routines.  During this same time period, and prior to the commission of the Teaneck robbery, defendants and Tairi committed the Staten Island robbery on September 16, 1995, and the Englewood Cliffs robbery on November 1, 1995.  Although clearly separate incidents and, despite the State's contention to the contrary, not demonstrated to be

2

part of a single integrated plan, all three had similarities
as reflected by the following.

On September 16, 1995, defendants lay in wait for the
victim outside his home in Staten Island; when he arrived
they attacked him, bound him with duct tape and drove him
around in his car before returning to the residence where
his mother and father were.  One defendant wore a Halloween
mask and both were armed with handguns.  Threats of being
"with the Mafia" were made.  They demanded ransom from the
father, threatened to rape the mother and took approximately
$5000 in cash and jewelry.  When the victim tried to escape,
defendants caught and pistol-whipped him, bound his head and
hands with duct tape, placed him in the trunk of the family
car and drove to Torres' Paterson residence.  They parked
nearby, leaving the car unattended, and the victim escaped.

On November 1, 1995, defendants, with Tairi, waited
near the home of the victim in the Englewood Cliffs robbery.
Defendants were armed with guns and both wore masks.  They
assaulted the victim in his garage, pistol-whipping him in
the face.  The victim managed to set off the burglar alarm,
causing the attackers to flee.

On November 8, 1995, defendants, again masked and again
with Tairi, followed Lewis to his home in Teaneck from his
place of employment and waited outside until he pulled into
his garage.  Before the garage door closed, Tairi and Torres
rushed inside and assaulted Lewis, duct-taping his head and
mouth.  The assault and duct-taping resulted in his death.
Tairi took money and a credit card from the victim's pockets
and gave it to DeJesus, who waited outside.  DeJesus left
the scene and used the card before it could be reported
stolen.  Meanwhile, Torres and Tairi dragged Lewis' body up
to the bedroom of his mother, Lillian Lewis, and demanded
money.  They duct-taped her face, handcuffed and bound her
and ransacked the house before driving away in Lewis'
Cadillac.

(Ra3,[1] December 10, 2001 Appellate Division Opinion at pp. 2-5).

---

[1] "Ra" refers to the state court record provided by the
respondents as follows:

Ra1  Petitioner's direct appeal brief and appendix
Ra2  Respondent's direct appeal brief and appendix
Ra3  December 10, 2001 Appellate Division Opinion

B.  <u>Procedural History</u>

On November 13, 1996, a Bergen County Grand Jury indicted

petitioner, Edwin Torres ("Torres"), Felix DeJesus and Dennis

Rolon under Indictment No. S-1570-96.  The Indictment charged

Torres and DeJesus with seventeen (17) counts, including three

counts of first degree robbery, one count of knowing or

---

Ra4   Petitioner's petition and appendix for certification
Ra5   Respondent's opposition to petition for certification
Ra6   Petitioner's state PCR appeal brief and appendix
Ra7   Petitioner's state PCR appendix Vol. II
Ra8   Respondent's PCR brief and appendix
Ra9   July 24, 2007 Appellate Division Opinion
Ra10  Petition and appendix for certification from denial of
      PCR
Ra11  Respondent's letter opposition to petition for
      certification
Ra12  June 11, 1997 transcript
Ra13  June 26, 1997 transcript
Ra14  July 25, 1997 transcript
Ra15  March 19, 1998 transcript
Ra16  March 25, 1998 transcript
Ra17  April 14, 1998 transcript
Ra18  May 6, 1998 transcript
Ra19  May 7, 1998 transcript
Ra20  May 20, 1998 transcript
Ra21  May 28, 1998 transcript
Ra22  August 11, 1998 transcript
Ra23  September 1, 1998 transcript
Ra24  September 2, 1998 transcript
Ra25  November 2, 1998 transcript
Ra26  November 4, 1998 transcript
Ra27  November 5, 1998 transcript
Ra28  November 6, 1998 transcript
Ra29  November 10, 1998 transcript
Ra30  November 12, 1998 transcript
Ra31  November 13, 1998 transcript
Ra32  November 16, 1998 transcript
Ra33  December 18, 1998 transcript
Ra34  November 15, 2004 transcript
Ra35  March 23, 2005 transcript

4

purposeful murder, one count of felony murder, second-degree kidnapping, and various counts of automobile theft, possession of firearms for unlawful purposes, aggravated assault and conspiracy to commit armed robbery and burglary.

Before trial, Torres moved to sever the charges in the Indictment arising from the three separate and distinct incidents.  The motion for severance was denied by the Honorable William C. Meehan, J.S.C., by oral opinion rendered on July 25, 1997, and by Order dated August 5, 1997.  On September 1, 1998, Judge Meehan granted the State's motion for separate trials of defendants Torres and DeJesus.  Torres also moved for suppression of un-counseled statements and out-of-court identifications, which motions were denied on March 25, 1998 and September 2, 1998, respectively.

Torres was tried before the Honorable John A. Conte, J.S.C., and a jury, from November 2, 1998 through November 16, 1998.  A jury returned a verdict of guilty on all charges.  Judge Conte sentenced Torres on December 18, 1998, to an aggregate term of life plus sixty-nine (69) years in prison with a fifty-eight (58) year parole disqualifier.

Torres filed a direct appeal from his conviction and sentence with the Superior Court of New Jersey, Appellate Division.  Torres' appeal was denied in a per curiam opinion decided on December 10, 2001.  <u>State v. Edwin Torres</u>, Docket No.

5

A-5292-98T4 (App. Div. 2001).  The Supreme Court of New Jersey denied certification on February 14, 2002.  State v. Torres, 171 N.J. 338 (2002).

On April 25, 2002, Torres filed a verified petition for post-conviction relief ("PCR") in state court.  Assigned counsel filed a brief and supporting appendix on Torres' behalf on April 24, 2004.  A hearing was held on November 15, 2004, and Judge Conte granted a postponement to allow Torres' counsel time to investigate Torres' claims and file a supplemental brief.  A second and final hearing was held on March 23, 2005.  Oral arguments were heard, and Judge Conte reserved judgment.  He issued a letter opinion on April 5, 2005, denying an evidentiary hearing and post-conviction relief.  An Order was filed on April 15, 2005.

Torres appealed from the denial of his state PCR petition to the Superior Court of New Jersey, Appellate Division.  The Appellate Division affirmed Judge Conte's denial of post-conviction relief in a per curiam opinion decided on July 25, 2007.  State v. Edwin Torres, Docket No. A-6445-04T4 (App. Div. 2007).  The Supreme Court of New Jersey denied certification on October 24, 2007.  State v. Torres, 192 N.J. 599 (2007).

Torres filed this habeas petition pursuant to 28 U.S.C. § 2254, on or about August 12, 2008.  The State filed a response to the petition on June 5, 2009, with the relevant state court record.  Torres did not file a traverse.

## II.  STATEMENT OF CLAIMS

Torres asserts the following claims in his petition and amended petition for habeas relief:

A.  Petitioner must be sentenced to the 30-year sentence that he allegedly agreed to before trial because he accepted the plea offer and it was improper for the prosecutor to withdraw the offer because the co-defendant had rejected it.  (Petition, Ground one).[2]

B.  Ineffective assistance of state PCR counsel for his failure to investigate claims raised by petitioner.  (Pet., Ground two).[3]

_____

[2]  This claim was never raised by petitioner in his state court proceedings.  Therefore, it is unexhausted.  However, rather than dismiss this petition as a mixed petition, it would appear that Torres abandoned this claim when he submitted his amended petition on December 31, 2008 (docket entry no. 3), because he does not address the claim at any point in his thorough and comprehensive amended petition with supporting brief.  Accordingly, this Court finds that Torres has abandoned this claim, and no further discussion on the merits is necessary.

[3]  This claim will be denied with prejudice pursuant to 28 U.S.C. § 2254(I), which states that: "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

C.  The trial court erred in denying petitioner's pre-trial motion to sever the counts of the indictment for trial with respect to the three separate and distinct crimes.  (Pet., Ground three, Amended Petition at Point II).

D.  Ineffective assistance of trial counsel.  (Pet., Ground four, Amended Pet., Point III).

E.  Petitioner is entitled to an evidentiary hearing. (Amended Pet., Point I).

F.  Statements made by petitioner should have been suppressed, but were not, in violation of petitioner's Fifth, Sixth and Fourteenth Amendment rights.  (Amended Pet., Point IV).

G.  Ineffective assistance of appellate counsel.  (Amended Pet., Point V).

The State essentially contends that the petition should be denied for lack of substantive merit or because it fails to raise claims of federal constitutional dimension.  The State also argues that petitioner's claim concerning the admissibility of his statements is procedurally defaulted.

### III.  STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce

v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney
General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.
Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399
U.S. 912 (1970).  Because petitioner is a pro se litigant, the
Court will accord his petition the liberal construction intended
for pro se petitioners.

Section 2254(a) of Title 28 of the United States Code gives
the court jurisdiction to entertain a habeas petition challenging
a state conviction or sentence only where the inmate's custody
violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to
deciding whether a conviction violated the Constitution, laws, or
treaties of the United States."  Estelle v. McGuire, 502 U.S. 62,
67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County
Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal
courts hold no supervisory authority over state judicial
proceedings and may intervene only to correct wrongs of
constitutional dimension."  Smith v. Phillips, 455 U.S. 209, 221
(1982).  Generally, "[i]f a state prisoner alleges no deprivation
of a federal right, § 2254 is simply inapplicable," Engle v.
Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's
interpretation of state law, including one announced on direct
appeal of the challenged conviction, binds a federal court

sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief. That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." <u>Johnson v. Rosemeyer</u>, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." <u>Smith v. Horn</u>, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); <u>see</u> <u>also</u> <u>Smith v. Zimmerman</u>, 768 F.2d 69, 71, 73 (3d Cir. 1985).

In addition to the case law, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. <u>See</u> 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. <u>See</u> 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court

10

proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with <u>res judicata</u> effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004)(citations and internal quotation marks omitted), <u>reversed on other grounds sub nom</u>.  <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005); <u>see also</u> <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  <u>See</u> <u>Rompilla</u>, 355 F.3d at 247.  <u>See also</u> <u>Chadwick v. Janecka</u>, 312 F.3d 597, 605-06 (3d Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 1000 (2003)(<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237 (2000)(even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference)).  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply."  <u>Rolan</u>, 445 F.3d at 678.  <u>See also</u> <u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment), <u>cert. denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

11

If the New Jersey courts adjudicated the petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  <u>See</u> 28 U.S.C. § 2254(d).  Accordingly, this Court may not grant habeas relief to the petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, <u>see</u> 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Adamson is in custody in violation of the Constitution or laws or treaties of the United States.  <u>See</u> 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 660 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U .S.C. § 2254(d)(1), if the state court "contradicts the

governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4]  See id. at 409-10. "The unreasonable application test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit

---

[4]  See also Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.")(citations and internal quotation marks omitted).

has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).


IV.  ANALYSIS

A.  Severance Claim

Torres' most significant claim is his argument that his rights to due process and a fair trial were violated when the trial court denied his motion for severance of the three separate crimes.  Torres and his co-defendant, DeJesus, both raised this argument on direct appeal.  The Appellate Division rejected the claim as follows:

> Both defendants contend that the judge erred in denying their pretrial motion to sever the three incidents for separate jury trials.  We disagree.  To begin with, as the motion judge found, there were a number of similarities in these incidents - defendants lay in wait for their victim, ambushed, bound and pistol-whipped them in their houses, wore Halloween masks and made Mafia threats.  In part, R. 3:7-6 permits joinder where the "offenses charges are of the same or similar character . ..."  Here, the necessary similarity for permissive joinder purposes were met.
>
> Defendants contend, however, that joinder was prejudicial to them.  Relief from prejudicial joinder is governed by R. 3:15-2(b) which provides in part: "[i]f ... it appears that a defendant ... is prejudiced by a permissible or mandatory joinder of offenses ... the court may order ... separate

14

trials of counts... ."  The trial judge has broad discretion in acting upon an R. 3:15-2(b) motion.  State v. Pitts, 116 N.J. 580, 601 (1989)("[A] trial court must be accorded ample discretion in determining whether to grant relief from joinder of offenses because of the potential for prejudice.");  State v. Krivacska, 341 N.J. Super. 1, 37-38 (App. Div.), certif. denied, __ N.J. __ (2001).  See also State v. Brown, ___ N.J. ___ (2001)(severance in an R. 3:7-7 joinder is "addressed to the sound discretion of the trial court."  Slip op. at 27.).

The critical inquiry is whether, if tried separately, evidence of the offenses sought to be severed would be admissible as other crimes evidence under N.J.R.E. 404(b).  State v. Pitts, supra, 116 N.J. at 601-02.  A determination by a trial judge to admit prior crimes evidence will not be reversed on appeal absent a clear error of judgment so wide of the mark as to result in manifest injustice.  State v. Marrero, 148 N.J. 469, 483-84 (1997);  State v. Baluch, 341 N.J. Super. 141, 191 (App. Div.), certif. denied, ___ N.J. __ (2001).

We digress somewhat here.  In State v. Lumumba, 253 N.J. Super. 375, 388-89 (App. Div. 1992), we observed that the commonality test of R. 3:7-6 is not as strict as that required by former Evid. R. 55 (now N.J.R.E. 404(b)) where the other crimes evidence is claimed to be relevant to establish a plan.  This observation has been cited as supportive of the proposition that "relief from joinder might not be available under [R. 3:15-2(b)] even if other crimes evidence were excluded ..." under N.J.R.E. 404(b).  Pressler, Current N.J. Court Rules, comment 3 on R. 3:15-2(b)(2001).  We did not so state in Lumumba.  Lumumba did not involve a joinder issue.  Moreover, it is clear that, in the case of permissive joinders, if N.J.R.E. 404(b) would preclude evidence of one offense in the trial of another, a severance should be granted.  State v. Chenique-Puey, 145 N.J. 334, 343 (1996).  We note, too, the comment in State v. Urcinoli, 321 N.J. Super. 519 (App. Div.), certif. denied, 162 N.J. 132 (1999), that "[t]he test [under R. 3:15-2(b)] is whether the jury could arrive at a decision on each charge separately and irrespective of the evidence concerning guilt on the other charges."  Id. at 542.  We do not read this to suggest that if the other crimes test under N.J.R.E. 404(b) cannot be met, a trial judge nonetheless, could properly deny a severance motion because a jury might be able to arrive at a verdict as to one offense without regard to the other joined offenses.

In any event, here, we are convinced that the test of
N.J.R.E. 404(b) is met.  At the outset, the focus of
defendants' motion was to sever the Staten Island and
Englewood Cliffs offenses from the Teaneck incident with the
murder charge.  They both sought to minimize their
involvement in, particularly, the murder and the necessary
mental states required for a murder conviction.  To the
extent their participation in the Staten Island and
Englewood Cliffs offenses evidenced a direct involvement and
awareness of the full criminality that occurred, evidence of
that could be considered by the jury as indicative of their
mental states in the Teaneck incident.  This they each
sought to avoid.

N.J.R.E. 404(b) is a rule of exclusion, but it seeks to
exclude evidence of prior criminal acts only when such
evidence is offered solely to establish the forbidden
inference of propensity or predisposition.  State v. Covell,
157 N.J. 554, 563 (1999); State v. Eatman, 340 N.J. Super.
295, 301 (App. Div.), certif. denied, ___ N.J. ____ (2001).
The rule, therefore, expressly permits such evidence to be
admitted to prove other facts in issue, such as "motive,
intent, plan, knowledge, identity, or absence of mistake or
accident."  State v. Covell, supra, 157 N.J. at 563-64
(quoting State v. Stevens, 115 N.J. 289, 293 (1989)).
Admission, however, of prior criminal conduct under N.J.R.E.
404(b) must meet a four-pronged test requiring:

> 1.  The evidence of the other crime must be admissible
> as relevant to a material issue:
>
> 2.  It must be similar in kind and reasonably close in
> time to the offense charged;
>
> 3.  The evidence of the other crime must be clear and
> convincing; and
>
> 4.  The probative value of the evidence must not be
> outweighed by its apparent prejudice.
>
> [State v. Cofield, 127 N.J. 328, 338 (1992).]

See e.g., State v. Koskovich, 168 N.J. 448, 483 (2001);
State v. Nance, 148 N.J. 376, 387 (1997).  "[A] 'careful and
pragmatic evaluation of the evidence based on the specific
context in which it is offered" must be made by the trial
judge, State v. Hernandez, ___ N.J. ___ (2001)(slip op. at
12), (quoting State v. Stevens, supra, 115 N.J. at 303), but

a 404(b) ruling ordinarily will not be reversed absent a clear error of judgment so wide of the mark as to result in manifest injustice. State v. Marrero, supra, 148 N.J. at 483-84; State v. Baluch, supra, 341 N.J. Super. at 191.

The similarities that we have previously mentioned and defendants' inculpatory statements, not to mention the overwhelming evidence the State presented as to each separate incident, plainly satisfied the second and third prong of the 404(b) test.[footnote omitted]  Defendants' severance contentions focus upon the first and fourth prongs of the test.  The first prong requires that the other crimes evidence must be relevant to a material issue involved in the crime or crimes being tried.  In the context of a severance analysis, the question is whether the crimes sought to be severed would tend to prove some material aspect of the remaining crime.  In other words, would evidence of the Staten Island and Englewood Cliffs crimes prove an issue in dispute in the Teaneck crime?

N.J.R.E. 404(b) permits other crimes evidence if it proves "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute."  N.J.R.E. 404(b).  The probative issue must be "genuine" and the other crimes evidence "necessary" for its proof.  State v. Hernandez, supra, ___ N.J. at ___ (slip op. at 12).  State v. G.V., 162 N.J. 252, 258-63 (2000).

The State asserts that evidence of all three of the crimes establishes a common plan or scheme, establishes the "identity" of defendants through the similarities and establishes the defendants' motive in each incident.  The trial judge seems to have accepted these contentions.  We do not.  There is no evidence here of an integrated plan or scheme such that each of the separate crimes can be considered part of an overarching plan.  See State v. Lumumba, supra, 253 N.J. Super. at 386-88.  If by identity the State suggests signature crime evidence, we reject that.  See State v. Fortin, 162 N.J. 517, 532 (2000).  Moreover, as to evidence of motive, the other evidence the State had to prove each of the crimes and the involvement of the perpetrators clearly establishes their motive.  Motive was simply not a disputed issue.

However, each defendants' mental state, both in terms of intent and knowledge, was at issue in each of the crimes, particularly as to the murder of Lewis.  DeJesus' assertion

of diminished capacity such that he lacked the requisite intent and knowledge directly placed his state of mind at issue.  Although Torres did not rely on a defense of diminished capacity, he argued that his level of culpability was less than that of DeJesus and Tairi because he haplessly went along with them while lacking their knowledge or purpose.  In this respect, defense counsel said in summation during Torres' trial:

> Again the Prosecutor is going to tell you find him guilty of everything.  He participated.  Find him guilty.  But is that the right thing to do?  Should he be guilty of everything or should he be guilty of what he did?
>
> . . . .
>
> What does he do?  He is not a leader.  Afrim Tairi is a leader.  Felix DeJesus may be a leader but Edwin Torres is a follower.  He's a follower.  He follows what they tell him to do.  And why?  Why does he do that?  'Cause he's too stupid to say no.  He's also too stupid to plan these things himself because if someone comes up to you and says come on we're going to participate in this robbery, what should you say? You should say no.  But he doesn't.
>
> And again what do these things mean?  Again, they become very important when you're asked to say find him guilty of everything because he participated.
>
> The important thing here is the level of participation.

The degree of defendants' actual participation in each of the crimes can be considered as reflective of a particular mental state.  Cf. State v. Eatman, supra, 340 N.J. Super. at 301.  Moreover, the Supreme Court has recently observed "[i]n criminal prosecutions, New Jersey courts generally admit a wider range of evidence when the ... intent of the accused is material."  State v. Covell, supra, 157 N.J. at 565.  Accord State v. Koskovich, supra, 168 N.J. at 483.  Such evidence "includes evidentiary circumstances that 'tend to shed light' on a defendant's ... intent or which 'tend fairly to explain his actions,' even though they may have occurred before the commission of the offense."  Ibid.  (quoting State v. Rogers, 19 N.J. 218, 228 (1955)).  See State v. Koskovich, supra, 168 N.J. at 483-85; State v. Mulero, 51 N.J. 224, 228 (1968); State v. Cusick, 219 N.J.

18

Super. 452, 464-66 (App. Div.), certif. denied, 109 N.J. 54
(1987).  Compare State v. G.V., supra, 162 N.J. at 259-63
(since neither motive nor intent were genuinely at issue and
the prosecutor urged the jury to consider evidence of prior
criminal conduct as a propensity to commit the crime being
tried, admission of prior criminal conduct was reversible
error).

Here, defendants' mental state , that is their respective
intent and knowledge as to the Teaneck events, was placed
directly in issue.  Evidence of their involvement in the
Staten Island and Englewood Cliffs crimes would "tend to
shed light on" their state of mind at the time of the
Teaneck crime.

The other crime evidence, therefore, was probative of a
material issue in dispute.  The remaining question is
whether, under the fourth prong of the N.J.R.E. 404(b) test
and the related N.J.R.E. 403 analysis, State v. Covell,
supra, 157 N.J. at 568, its probative value outweighed the
prejudice.  Since defendants admitted their participation in
each incident, the prejudice is lessened.  State v. Pitts,
supra, 116 N.J. at 603.  Moreover, defendants point to no
other less inflammatory source of evidence that would be
equally probative of their respective mental states.  See
State v. Marrero, supra, 148 N.J. at 482.  Finally, in each
trial, the juries were properly instructed to consider each
count separately.  State v. Pitts, supra, 116 N.J. at 603;
State v. Lado, 275 N.J. Super. 140, 150-51 (App. Div.),
certif. denied, 138 N.J. 271 (1994).  We are satisfied,
therefore, that the trial judge did not abuse his discretion
in denying defendants' severance motion.

(Ra3, December 10, 2001 Appellate Division Opinion, at pp. 5-13).

Torres now argues, in this federal habeas petition, that the

trial court's failure to sever trial on the three incidents

deprived him of a fair trial and due process.  The Supreme Court

has observed that "[i]mproper joinder does not, in itself,

violate the Constitution.  Rather, misjoinder would rise to the

level of a constitutional violation only if it results in

prejudice so great as to deny a defendant his Fifth Amendment

19

right to a fair trial." <u>United States v. Lane</u>, 474 U.S. 438, 446 n. 8 (1986).  The Supreme Court explained in <u>Zafiro v. United States</u>, 506 U.S. 532 (1993), that "an important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence [but] a fair trial does not include the right to exclude relevant and competent evidence."  <u>Id</u>. at 540 (citation and internal quotation marks omitted).

In this case, the Appellate Court's ruling was based solely on state law and state rules of procedure and evidence. Generally, matters of state procedural law are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  This is generally true even where the state court incorrectly applied state law.  <u>Id</u>. at 71. Rather, a federal habeas claim will lie only where a state court determination violated some federally protected right.  <u>Id</u>. at 68.  The Third Circuit likewise stated:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991), cert. denied, 505 U.S. 1223 (1992); see also Smith v. Zimmerman, 768 F.2d 69, 73 (3d Cir. 1985)("a 'mere error of state law' is not a denial of due process").

Here, it is plain that Torres was not denied due process or other federally protected right when the trial court denied his motion to sever the counts.  The record clearly indicates that the trial judge had ample discretion in whether to sever any of the incidents, and that the court correctly applied state law and rules of evidence in determining that Torres was not prejudiced by the joinder of the three incidents, because these incidents would have been admissible as other crimes evidence under N.J.R.E. 404(b).  Further, the Appellate Division correctly applied state law in determining that the trial court did not abuse its discretion in denying the severance motion.

For instance, in his federal habeas petition here, Torres repeats the same arguments that were rejected by the Appellate Division.  Namely, Torres contends that a common plan, motive and identity were not material issues in dispute at trial and thus, the other crimes evidence would not have been permissible.  However, Torres glosses over the issue of his mental state that was squarely in dispute, and the Appellate Division's decision in this regard.

21

Likewise, Torres argues that prejudice from the other incidents outweighed any probative value, and that limiting instructions are useless and can't "unring the bell."  The Appellate Division rejected these arguments as well, observing that any prejudice is lessened by Torres' own admission of involvement in each incident and the trial court's instruction to the jury to consider each count separately.  Consequently, Torres has failed to establish any due process violation in the trial court's denial of his motion for severance, or the Appellate Division's ruling on the issue.

Indeed, this Court finds that the state courts' decision regarding the joinder of the three separate incidents did not "result[ ] in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial" Lane, 474 U.S. at 446, was not contrary to, or an unreasonable application of Supreme Court precedent.  See Herring v. Meachum, 11 F.3d 374, 377-78 (2d Cir. 1993)("where a defendant is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial"); United States ex rel. Laws v. Yeager, 448 F.2d 74, 82 (3d Cir. 1971); United States ex rel. Evans v. Follette, 364 F.2d 305 (2d Cir. 1966).  Therefore, this claim will be denied for lack of merit.

B. <u>Evidentiary Hearing</u>

Next, Torres seeks an evidentiary hearing.  He argues that he requested an evidentiary hearing at every level of his state habeas proceedings but was denied.  Torres does not articulate a basis for an evidentiary hearing.  Specifically, he does not set forth which material facts were in dispute that required an evidential hearing.

It would appear from the record that Torres raised the issue as to an evidentiary hearing in his state PCR proceedings.  The state PCR court found no basis to conduct an evidentiary hearing, noting that Torres pointed to no material facts in dispute that would require oral testimony.  Only the issue of Torres' intoxication at the time of his arrest was at issue and the PCR court remarked that a finding of intoxication was not necessary to determine ineffective assistance of counsel.  Rather, the operative inquiry was not whether Torres was intoxicated but whether counsel appropriately declined to probe the issue at trial.  (Ra9, July 24, 2007 Appellate Division Opinion at pg. 12).

Consequently, it seems that Torres is seeking to have an evidentiary hearing because he was denied one in his state PCR proceeding.  However, Torres has no federal right to an evidentiary hearing or other relief denied by a state PCR court.  Infirmities in a state PCR proceeding do not raise constitutional

questions in a federal habeas action.   See Hassine v. Zimmerman, 160 F.3d 941, 954 (3d Cir. 1998)("what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation").   Thus, errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.   Hassine, 160 F.3d at 954.

In this case, as shown above, Torres failed to establish a prima facie case of ineffective assistance of counsel that would have allowed the state court to grant an evidentiary hearing. This Court finds that the state PCR court committed no error of a constitutional dimension in denying an evidentiary hearing, and Torres has demonstrated no basis for an evidentiary hearing here. Torres has failed to show that the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   Williams, 529 U.S. at 412-13. Therefore, this claim is denied.

C.  <u>Ineffective Assistance of Counsel Claims</u>

Torres asserts that his trial counsel and appellate counsel were ineffective in violation of his Sixth Amendment right to effective assistance of counsel.  First, he asserts that his trial counsel was ineffective by telling the jury Torres would testify, conceding his guilt and then refusing to allow Torres to testify.  Second, Torres alleges that counsel failed to investigate, interview and call witnesses with respect to an issue concerning his intoxication at his arrest in order to challenge his <u>Miranda</u> waiver as involuntary.  Torres next contends that trial counsel did not adequately prepare for the pretrial motion to suppress Torres' statement.  Namely, counsel did not raise the argument that Torres had requested counsel before talking to police.  Torres also asserts that his trial counsel made mistakes at trial by failing to cross examine 17 of 33 state witnesses.  Finally, Torres alleges that his appellate counsel was ineffective in failing to raise all of the issues set forth in this petition on direct review.

Torres presented these claims for state court review in his state PCR proceedings.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under

25

Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Id.

If able to demonstrate deficient performance by counsel, the petitioner must also show that counsel's substandard performance actually prejudiced his defense.  See Strickland, 466 U.S. at 687.  Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. See id. at 695-96.  Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim.  See id. at 697; see also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

Finally, the Supreme Court has held that the Due Process Clause of the Fourteenth Amendment guarantees a defendant the effective assistance of counsel on a first direct appeal as of right.  See Evitts v. Lucey, 469 U.S. 387 (1985).  Claims of ineffective assistance of appellate counsel are evaluated under the Strickland standard.  See Lewis v. Johnson, 359 F.3d 646, 656 (3d Cir. 2004); Wright v. Vaughn, 2004 WL 1687865 at *6, n. 10 (E.D.Pa. July 26, 2004).  Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made, see Jones v. Barnes, 463 U.S. 745, 754 (1983), but a petitioner may establish that appellate counsel was constitutionally ineffective "if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

Moreover, in order to prevail on a claim that appellate counsel was ineffective, a petitioner must show not only that counsel's performance fell below an objective standard of reasonableness, but also that there was a reasonable probability, but for counsel's deficiency in raising the arguments on appeal, that the conviction would have been reversed on appeal.  See Buehl v. Vaughn, 166 F.3d 163, 173-74 (3d Cir.), cert. dismissed, 527 U.S. 1050 (1999).

1. *Trial Counsel*

On appeal from denial of Torres' state PCR petition, the

Appellate Division found as follows:

> Judicial review of a defense counsel's performance is
> "highly deferential." Strickland v. Wash., 466 U.S. 668,
> 689, 104 S.Ct. 2052, 2065, 80 L. Ed.2d 674, 694 (1984).  In
> order to establish a claim of ineffective assistance of
> counsel, a petitioner must first show that counsel's
> performance was "deficient." State v. Fritz, 105 N.J. 42,
> 52 (1987)(quoting Strickland, supra, 466 U.S. at 687, 104
> S.Ct. At 2064, 80 L. Ed.2d at 693).  This requires a showing
> that defense counsel was not functioning as 'counsel'
> guaranteed the defendant by the Sixth Amendment."  Ibid.
> Second, petitioner must establish that "counsel's errors
> were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable." Ibid.  Thus, "defendant
> must show that the deficient performance prejudiced the
> defense." Ibid.
>
> . . . .
>
> In the present case, Judge Conte [the state PCR judge]
> concluded,
>
>> The defendant argues that he was intoxicated at the
>> time of arrest and interview by police.  He asserts
>> that his trial counsel failed to probe this issue.
>> However, with respect to his being intoxicated, the
>> facts reveal that defendant was of the right mind to
>> pretend that he was sleeping while investigators spoke
>> in the interview room.  It was only after defendant saw
>> DeJesus did he begin to confess his involvement in the
>> crime.  Trial counsel raised these issues of
>> intoxication at trial which were decided on by the
>> Honorable William Meehan, P.J.S.C.  It cannot be said
>> that the trial judge did not adequately rule on this
>> issue considering the amount of evidence presented by
>> the State and by the defendant's own admissions.  Based
>> on the foregoing reasons, defendant has failed to
>> satisfy the two-prong test in accordance with
>> Strickland.
>
> We are persuaded, as was the PCR judge, that given the
> conduct of defendant at the time of his arrest, we cannot
> conclude that defense counsel's decision not to call
> defendant's cousins, whose proffered testimony was confined
> to describing defendant's eyes as bloodshot, was beyond the

"wide range of reasonable professional assistance." Id. at 319.  Moreover, defense counsel presented several arguments in favor of suppression, including intoxication, but focused on undermining the signed Miranda card with evidence of discrepancies in the report.  As such, defendant has not shown that counsel was deficient. [citation omitted]

Further, assuming the testimony of the cousins had been offered, it is unlikely that their testimony would have resulted in suppression of defendant's statement, since the court also had the benefit of the officer's testimony as to defendant's condition at the time of his arrest.  Therefore, the failure to call his cousins as witnesses cannot be said to have materially contributed to his conviction.  See Fritz, supra, 105 N.J. at 58.

Likewise, Judge Conte correctly concluded that the remaining challenges to defense counsel's performance failed to meet the two-pronged test set forth in Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L. Ed.2d at 693.  The judge stated,

> With respect to defendant's claim that trial counsel was incompetent for failing to raise the issue that defendant asked for counsel at the time of his arrest, the record is clear that at the motion to suppress hearing, defendant never asked for counsel or to remain silent.  This point is without merit.

> With respect to the claim that trial counsel was deficient when he failed to cross-examine seventeen state witness, the prosecutor correctly points out that many of the witnesses that trial counsel did not wish to cross examine had very little impact on the outcome of the case.  Trial counsel's decision to allow direct examination of these witnesses without cross-examination does not render his representation ineffective.

> With respect to the claim that trial counsel was deficient when he failed to call defendant as a witness after telling the jury he would in his opening statement, the defendant contends that this strategic move shows trial counsel failed to adequately represent him.  However, the defendant fails to understand that trial [counsel's] decision not to call him was part of this trial strategy.  If counsel believed, before the State presented its evidence, that defendant may be a credible and strong witness, then it was within his discretion to tell the jury that the defendant may be

29

called as a witness.  If, after the State presented its case, counsel believed his client would not be an effective witness, he was again within his discretion not to call defendant.  Furthermore, proper jury instructions were given regarding the defendant's decision not to be called as a witness.[]

Despite what trial counsel may have advised, the defendant was personally addressed by the Court regarding his choice to testify.  The defendant himself made the decision.  Defendant's claim with regard to this issue without merit.

With respect to trial counsel[']s failure to object to jury charges and to the prosecutor's opening and closing statements counsel did not object because both he and the state agreed as to the jury instructions.  Furthermore, the remarks made by the prosecutor were neither inflammatory nor improper.  Trial counsel did not object because the prosecutor was well within his bounds when delivering his arguments.  Defendant's claim that trial counsel was deficient in his representation with regard to this issue is without merit.

[D]efendant contends that he received ineffective assistance of counsel at the appellate level.  The Supreme Court's decision in <u>Strickland</u> then applies to this claim.  Although an attorney does not have to raise issues which he considers frivolous on appeal, he does have a duty to raise meritorious issues which are likely to lead to the defendant's conviction being reversed.  <u>Jones v. Barnes</u>[,] 463 U.S. 745[,] 103 S.Ct. 3308, 77 L. Ed.2d 987] (1983).  However, counsel cannot be rendered ineffective for failing to raise meritless issues.  <u>State v. Worlock</u>, [117] N.J. 596[,] 625 (1990).  Simply because defendant's appellate counsel did not raise the issues that present counsel raises does not make him ineffective.  Appellate counsel's decision to argue defendant's case in another fashion does not make his strategy deficient so as to meet the <u>Strickland</u> test.  Defendant's claim with regard to this issue is without merit.

(Ra9, July 24, 2007 Appellate Division Opinion at pp. 6-12).

In his habeas petition, Torres has made no showing to contradict the state court rulings that his trial counsel's performance was not deficient in any way.  Moreover, even if Torres could show that the actions (or inactions) of his counsel were deficient, he cannot satisfy the prejudice prong under Strickland.  Both the PCR court and Appellate Division found that there was no merit under Strickland's two-prong test to support Torres' claims of ineffectiveness of trial counsel.  In short, Torres simply has not demonstrated what counsel could have done that would have served to change the outcome this matter.

This Court is satisfied from its review of the pertinent state court record that there was ample evidence to support the state court rulings on this issue.  Indeed, this Court's careful review of the state court transcripts reveals that counsel's performance was competent given the overwhelming State evidence against Torres.  Thus, Torres can not argue that trial counsel's performance was deficient.  This Court also finds that Torres has not established a constitutional violation; nor has he shown, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in Strickland, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.   Therefore, this ineffective assistance of trial counsel claim for habeas relief will be denied.

2. *Appellate Counsel*

Next, Torres argues that his appellate counsel should have raised the claims asserted here on direct appeal.   Based on the state court record and state court factual findings, this Court finds no merit to Torres' claim.   Indeed, this Court's review of the state court record confirms that Torres' appellate counsel prepared a very thorough brief on behalf of petitioner.

First, counsel did raise the severance issue and an excessive sentence claim, although the Appellate Division ultimately rejected them.   Moreover, the claims of ineffective assistance of trial counsel are not raised on direct review since they involve issues outside the court record, so appellate counsel cannot be found deficient for not presenting ineffective assistance of trial counsel claims on direct review.

As to the claims of prosecutorial misconduct (made during opening and closing statements), improper jury instructions, and the failure to suppress Torres' statement, these claims were raised on PCR review and found to be meritless.   (Ra9, July 24, 2007 Appellate Division Opinion at pp. 10-11).   Torres' appellate counsel is not obligated to advance every nonfrivolous argument that can be made, see Jones v. Barnes, 463 U.S. at 754, as suggested by Torres.   Here, Torres has not shown that his appellate counsel "omitted significant and obvious issues while

32

pursuing issues that were clearly and significantly weaker."
Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).  He has
simply demonstrated that counsel failed to raise non-meritorious
claims which had no reasonable probability in reversing Torres'
conviction on appeal.   See Buehl, 166 F.3d at 173-74.

Therefore, this Court finds that petitioner's ineffective
assistance of appellate counsel claim fails because he cannot
demonstrate either deficient performance or any resulting
prejudice.  Accordingly, this Court will deny this claim pursuant
to 28 U.S.C. § 2254(b)(2), because it is completely lacking in
merit.

D.   Suppression of Statements Claim

Finally, Torres argues that his statements should have been
suppressed at trial because they violated his Fifth, Sixth and
Fourteenth Amendment rights.  Torres claims that he was
intoxicated at the time of his arrest, that his Miranda form was
"questionable and insufficient" because of certain
irregularities, that he was deceived by the police, that he
requested counsel but did not receive any, and that there should
not have been quotations regarding his oral statement.

The State argues that this claim challenging the
admissibility of Torres' statements is procedurally defaulted.
Both the state PCR trial court and the PCR appellate court found
that petitioner's claim was procedurally barred pursuant to N.J.
Ct. R. 3:22-4, because Torres raised it for the first time on PCR

review and the means for attacking the admissibility of his statements were present in the court records and thus were "readily available for resolution on direct appeal." (Ra9, July 24, 2007 Appellate Division Opinion at pg. 6). The Appellate Division further agreed with the PCR trial court that Torres "failed to set forth any basis upon which the court could find that enforcement of the rule would cause a fundamental injustice." Id.

A federal court ordinarily will not entertain a procedurally defaulted constitutional claim in a § 2254 habeas petition out of respect for finality, comity and the orderly administration of justice. Dretke v. Haley, 541 U.S. 386, 388 (2004); Johnson v. Pinchak, 392 F.3d 551, 557 (3d Cir. 2004); Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004). The purpose of the procedural default doctrine is to ensure that state prisoners give state courts a fair opportunity to decide the claims a prisoner raises in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 854 (1999)(Stevens, J., dissenting).[5]

A procedural default occurs when a habeas petitioner's federal claim is "barred from consideration in the state courts by an 'independent and adequate' state procedural rule." See, e.g., Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002); Doctor v. Walters, 96 F.3d 675, 683 (3d Cir. 1996). On habeas

---

[5] The majority in O'Sullivan "[did] not disagree" with Justice Stevens' explication of the procedural default doctrine. O'Sullivan, 526 U.S. at 848.

review of state prisoner claims, a federal court "will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'" Coleman v. Thompson, 501 U.S. 722, 734-35 (1991)(quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); see also Harris v. Reed, 489 U.S. 255, 266 (1989) (holding that habeas claim was not procedurally defaulted where state court did not clearly and expressly rely on procedural bar as ground for rejecting the claim).[6]  Only a "firmly established and regularly followed state practice" is adequate to prevent subsequent habeas review in federal court.  James v. Kentucky, 466 U.S. 341, 348-351 (1984). See also Lee v. Kemna, 534 U.S. 362, 376 (2002) ("Ordinarily, violation of 'firmly established and regularly followed' state rules ... will be adequate to foreclose review of a federal claim." (citations omitted)).  Generally speaking, "[a] state court's refusal to address a prisoner's federal claims because he has not met a state procedural requirement is both independent and adequate." Cabrera v. Barbo, 175 F.3d 307, 312 (3d Cir. 1999) (citations omitted).

---

[6] A state court's reliance on a procedural bar as an alternate holding is sufficient to trigger the "cause" and "prejudice" test.  See United States ex rel. Caruso v. Zelinsky, 689 F.2d 435, 440 (3d Cir. 1982).

A federal court may only entertain a procedurally defaulted claim on habeas review if the petitioner shows either cause to excuse the default and prejudice resulting from the default or that a fundamental miscarriage of justice will result should the federal court fail to hear petitioner's claim.  See Haley, 541 U.S. at 392-93; Coleman v. Thompson, 501 U.S. 722, 750 (1991); Murray v. Carrier, 477 U.S. 478, 485 (1986); Hubbard, 378 F.3d at 339; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999).

The "cause" standard requires a petitioner to show that some objective factor external to the defense impeded his efforts to comply with the state procedural rule.  See Coleman, 501 U.S. at 752 (citing Murray, 477 U.S. at 488).  In the absence of a Sixth Amendment violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation.  Coleman, 501 U.S. at 754.  Neither a pro se prisoner's ignorance of the procedural rule nor inadvertence satisfies the cause standard.  Murray at 485-87.  Failure of the state court to "bend the rules" for a pro se litigant is not cause.  Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir. 1992).

To establish "prejudice," a petitioner must prove "'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension.'"  Murray, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).  In the

36

context of an ineffective assistance claim, the Court of Appeals for the Third Circuit has held that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996).

In the alternative, in order to establish that failure to review an otherwise procedurally defaulted claim will result in a "miscarriage of justice," a petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. "Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him." Werts, 228 F.3d at 193 (citing Schlup v. Delo, 513 U.S. 298, 326 (1995)).

The procedural default applies to both state appeal and collateral proceedings. Coleman, 501 U.S. at 732. If the last state court to be presented with a particular federal claim reaches the merits, without also applying the procedural bar, it removes any bar to federal review. Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Johnson, 392 F.3d at 557 (New Jersey courts, while addressing merits of claim as alternative holding, "clearly rested on state procedural grounds as a separate and independent basis for their decision to deny Johnson's ... claim.").

It is plain from the state court record that the state PCR court and the Appellate Division held that Torres' claim

attacking the admissibility of his statements was procedurally barred under N.J. Ct. R. 3:22-4.  Further, this Court finds that Torres has not demonstrated any cause or prejudice for his default.  Any claim of ineffective assistance of counsel in this regard was determined to be meritless.  Moreover, he cannot show that he is actually innocent of the crime.  Therefore, this claim challenging the admissibility of his statements is procedurally defaulted, and must be dismissed accordingly.

### V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.   An appropriate Order follows.


S/Susan D. Wigenton
SUSAN D. WIGENTON
United States District Judge

DATED: January 6, 2010